**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Redflex Traffic Systems, Inc.,

       Plaintiff,

v.

Network Electric, Inc., and
Collins Electrical Systems, Inc., d/b/a ColliSys;

       Defendants,

and

Collins Electrical Systems, Inc.,       Civ. No. 05-2702 (RHK/JJG)
d/b/a ColliSys,             **MEMORANDUM OPINION**
                  **AND ORDER**
       Counterclaimant,

v.

City of Minneapolis,

       Counterclaimant.

---

David L. Shulman, Law Office of David L. Shulman P.L.L.C., Minneapolis, Minnesota, for Plaintiff Redflex Traffic Systems, Inc.

Christopher S. Hayhoe and Eric J. Riensche, Felhaber Larson Fenlon & Vogt P.A., Minneapolis, Minnesota, for Defendant Collins Electrical Systems, Inc.

---

**Introduction**

Plaintiff Redflex Traffic Systems, Inc. ("Redflex") has filed this interpleader action under 28 U.S.C. § 1335, and Federal Rule of Civil Procedure 22, against Defendant Network Electric, Inc. ("Network"), and Defendant Collins Electrical Systems, Inc. d/b/a ColliSys ("ColliSys"). This action arises from the design, installation, and operation of camera systems that monitor vehicular traffic at certain intersections in the City of Minneapolis (the "City"). The matter currently before the Court is ColliSys's Motion for Release of Funds. For the reasons set forth below, the Court will grant the Motion and dismiss the remaining state law claims without prejudice.

**Background**

Redflex, a Delaware corporation with its principal place of business in Arizona, designs and operates camera systems used to enforce motor vehicle laws. (Compl. ¶ 1.) On March 14, 2005, Redflex entered into a contract (the "Contract") with the City, agreeing to install and operate the City's Redlight Photo Enforcement System[1] (the "Camera System") at certain intersections within the City. (Needham Aff. Ex. 1 § 3.) The Contract granted the City a "non-exclusive, non-transferable license" to "access and use

---

[1] The Redlight Photo Enforcement System "means the process by which the monitoring, identification and enforcement of [traffic violations] is facilitated by the use of certain equipment, applications and back office processes of Redflex, including but not limited to cameras, flashes, central processing units, signal controller interfaces and detectors which, collectively, are capable of measuring [traffic violations] and recording such violation data in the form of photographic images of motor vehicles and/or their drivers." (Needham Aff. Ex. 1 § 1.24.)

[the Camera System] for the purpose of reviewing [p]otential [v]iolations and authorizing the issuance of citations." (Needham Aff. Ex. 1 § 4.1.)  In addition to installation costs, the Contract required the City to pay a "fixed monthly lease fee" to Redflex for use and maintenance of the Camera System.  (Needham Aff. Ex. 1 § D.)  Upon termination of the Contract, the cameras and equipment are to be removed from the City's intersections by Redflex.  (Needham Aff. Ex. 1 § 6.2.3.)

In April 2005, Redflex entered into a subcontract (the "Subcontract") with Network, an Illinois corporation, to install the Camera System at certain intersections in the City. (Compl. ¶¶ 2, 7.)  After entering into the Subcontract, Network contracted with ColliSys, a Minnesota corporation, to perform installation work for the Camera System.  (Compl. ¶¶ 3, 7.)  Installation work took place during May, June, and July of 2005, with the final invoice submitted by ColliSys to Network on July 15, 2005.  (Compl. ¶ 8.)  After work on the Camera System was completed, Redflex made payments to Network pursuant to the Subcontract.[2]  (Compl. ¶ 12.)

In September 2005, ColliSys informed Redflex that Network had not paid it for installation work on the Camera System and claimed that it was still owed $394,957 for that work. (Compl. ¶ 13.)  At the time, Redflex had not yet paid Network, pursuant to the Subcontract, for invoices totaling $203,997.  (Compl. ¶ 14.)  In October 2005, concerned about Network's failure to pay ColliSys for installation of the Camera System, Redflex

---

[2] Redflex did not enter into contracts with ColliSys or any other subcontractors. (Compl. ¶ 10.)

sought and obtained permission from Network to pay $100,000 directly to ColliSys.  (Eden Aff. ¶ 5.)  Redflex withheld the remaining $103,997, however, "because [it] was concerned that there were other unpaid subcontractors and because under the [Sub]contract with Network Electric, Redflex's payments were to be made directly to Network Electric."  (Id.)  On November 16, 2005, and December 6, 2005, ColliSys filed mechanic's liens totaling $294,957, with the Hennepin County Recorder against Redflex and the City.  (Compl. ¶ 16.)

On November 23, 2005, Redflex commenced this action alleging two claims: (1) for interpleader pursuant to 28 U.S.C. § 1335, asking "th[e] Court to determine and adjudge the rights of [ColliSys, Network, and 'XYZ Corporations'] to the $103,997 deposited with the Court," and (2) seeking a declaratory judgment determining the validity of the mechanic's liens filed by ColliSys.  (Compl. ¶¶ 18-21, A.)  In response, ColliSys asserted a cross-claim against Network for breach of contract, a counterclaim against Redflex and the City for mechanic's lien foreclosure, and a counterclaim against Redflex for unjust enrichment.  (Answer at 5-15.)

Network failed to answer or otherwise appear in the instant action and, on June 27, 2006, ColliSys obtained a Default Judgment against Network in the amount of $294,957.00 plus interest and costs.  (Doc. No. 53.)  ColliSys now seeks to have the funds deposited with the Court released to partially satisfy its judgment.  In support of ColliSys's Motion, James Johnson, the CEO of Network, avers that "there are no other unpaid subcontractors or suppliers to Network Electric who provided labor or materials for the Project who

remain unpaid. The only unpaid subcontractor or supplier to Network Electric is ColliSys." (Johnson Aff. ¶ 5.) He further avers that Network "does not oppose the release by the Court of the sum of $103,997 to ColliSys." (Id. ¶ 6.) Redflex does not oppose the release of the funds to ColliSys but does seek attorney's fees and costs from the funds, which ColliSys opposes.

## Analysis

The parties do not dispute that ColliSys is entitled to the release of the $103,997 deposited with the Court. Network's default, together with the lack of any other claims to the funds, makes ColliSys the only remaining claimant to the funds. See, e.g., New York Life Ins. Co. v. Conn. Dev. Auth., 700 F.2d 91, 96 (2nd Cir. 1983); Nationwide Mut. Fire Ins. Co. v. Eason, 736 F.2d 130, 133 (4th Cir. 1984). Nor is there a dispute that the release of funds would discharge Redflex of any further responsibility with respect to the $103,997 now on deposit with the Court.[3] In addition, ColliSys has agreed to "promptly supply counsel for Redflex . . . with satisfactions of its mechanic's liens having a value equivalent to" the funds released. (ColliSys's Proposed Order at 2.) Accordingly, the Court determines that the funds will be released subject to those conditions.

---

[3] ColliSys argues that "to the extent that Redflex is claiming that it is entitled to a complete absolution of liability upon release of funds, then Redflex is clearly wrong." (Reply Mem. at 4 (emphasis in original).) Redflex does not appear to be seeking a complete release of liability from all claims involving ColliSys and the Court will not order such a release.

Redflex seeks attorney's fees and costs with respect to the interpleader action. It argues that, as a "disinterested stakeholder," it is entitled to fees because "it resisted payment of the deposited funds for the purpose of protecting itself from claims from parties who do not provide disclaimers to the funds."[4] (Mem. in Opp'n at 6 (citing New York Life Ins. Co. v. Miller, 139 F.2d 657, 658 (8th Cir. 1944).) "The general rule in the Federal courts has been that a disinterested stakeholder who is threatened with multiple liability and who interpleads the claimants is entitled to attorneys fees." The Equitable Life Assurance Soc'y of the United States v. Miller, 229 F. Supp. 1018, 1020 (D. Minn. 1964) (citation omitted). "The fees awarded in [interpleader] cases . . . are generally modest since the expenditure of time involved is not great and the fund limited." Id. at 1021.

ColliSys argues that Redflex is not entitled to an award of attorney's fees because there was "no real dispute" that ColliSys was entitled to the funds and Redflex was not aware of any "other unpaid subcontractors" at the time it filed the interpleader action. (Reply Mem. at 5-6.) It further argues that Redflex is not a "disinterested stakeholder" because its interpleader action was a "preemptive strike" against ColliSys, in anticipation of ColliSys's valid claim. (Reply Mem. at 7.)

ColliSys's arguments are without merit. It is clear that, at the time Redflex filed the instant action, there was uncertainty as to whether Redflex would have exposed itself to

---

[4]Redflex's counsel requests a fee award of $7,200 for 32 hours of attorney time. "This time does not include time spent defending the counterclaims asserted by ColliSys or any of the briefing on the motions to dismiss." (Shulman Aff. ¶ 11.)

multiple lawsuits if it had awarded the fund directly to ColliSys.  See Unum Life Ins. Co. v. Kelling, 170 F. Supp. 2d 792, 794 (M.D. Tenn. 2001).  Redflex's Subcontract with Network provided that Redflex was to pay Network directly, and Redflex was unable to obtain adequate information from Network regarding other potential unpaid subcontractors.  (See Eden Aff. ¶¶ 3, 4, 5, 6.)  Furthermore, that ColliSys was threatening legal action against Redflex at the time Redflex filed the interpleader does not counsel against an award of fees; rather, it bolsters Redflex's position that it was exposed to potential multiple liability at the time, which it sought to avoid through this litigation—precisely the function of an interpleader action.  See, e.g., Conn. Dev. Auth., 700 F.2d at 93, 95.  Accordingly, the Court determines that an award of attorney's fees is appropriate here.  The Court will award counsel for Redflex $5,000, which represents the reasonable and modest fees associated with filing the interpleader[5], see Miller, 229 F. Supp. at 1021, in addition to $467 in costs. (See Shulman Aff. ¶ 11.)

The parties do not discuss the appropriate disposition of the remainder of the action currently pending before the Court.  There is no dispute, however, that only state law claims remain once the interpleader claim is extinguished.  The claims that remain are: (1) Redflex's claim for a declaratory judgment to determine the validity of mechanic's liens filed by ColliSys under Minnesota law; (2) ColliSys's cross-claim against Network for

---

[5]The Court determines that counsel's rate of $225 per hour is reasonable, and that an award of $5,000, in fees represents a reasonable number of hours spent "researching, preparing, and prosecuting plaintiff's interpleader claim."  (Shulman Aff. ¶ 11.)

breach of contract; and (3) ColliSys's counterclaims against Redflex and the City for mechanic's lien foreclosure, and against Redflex for unjust enrichment.

The Court concludes that the presence of the City in this action destroys complete diversity between the parties, and therefore diversity jurisdiction under 28 U.S.C. § 1332 is lacking.  Cf. Ryan v. Schneider Nat'l Carriers, Inc., 263 F.3d 816, 819 (8th Cir. 2001) (noting that "federal courts must look beyond the pleadings and arrange the parties according to their sides in the dispute").  Furthermore, the Court will decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)[6] over the remaining state law claims pending in this action.  Accordingly, the remaining state law claims will be dismissed without prejudice.  In addition, the pending motions to dismiss by both Redflex and the City, will be denied as moot.

**Conclusion**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that:

(1) ColliSys's Motion for Release of Funds (Doc. No. 42) is **GRANTED**; the Clerk of Court shall disburse $98,530.00 (representing the $103,997.00 currently on deposit with the Court, less the $5,467.00 due Reflex for its costs and attorney's fees) to Collins

---

[6]Not only has the Court "dismissed all claims over which it had original jurisdiction," 28 U.S.C. § 1367(c)(3), it also determines that—even if it had not—the remaining state law claims may raise "novel or complex issue[s] of State law," Id. § 1367 (c)(1).

Electrical Systems, Inc., in care of its counsel, Christopher S. Hayhoe, Felhaber, Larson, Fenlon & Vogt, P.A., Suite 2200, 220 South Sixth Street, Minneapolis, MN 55402;

(2) Redflex is discharged from any further liability with respect to the $103,997.00 now on deposit with the Clerk of Court, and Collins Electrical Systems, Inc. shall promptly supply counsel for Redflex with satisfactions of its mechanic's liens having a value equivalent to $103,997.00;

(3) the Clerk of Court shall disburse $5,467.00 (representing the reasonable and modest attorney's fees and costs associated with this interpleader action) to Redflex Traffic Systems, Inc., in care of its counsel, David L. Shulman, Law Office of David L. Shulman PLLC, 1005 Franklin Ave. W., Suite 3, Minneapolis, MN 55405;

(4) the remaining claim in Redflex's Complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**, and ColliSys's counterclaims and cross-claims (Doc. No. 11) are **DISMISSED WITHOUT PREJUDICE**[7]; and

(5) the Motions to Dismiss by Redflex (Doc. No. 13) and the City (Doc. No. 16) are **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 7, 2006                         s/Richard H. Kyle
                                              Richard H. Kyle
                                              United States District Judge

---

[7] See generally 28 U.S.C. § 1367(d).